as well. I think we have seasoned counsel here. You're aware of the lighting system. When the yellow light comes on, you have two more minutes. When the red light comes on, cut it. And rebuttal is for rebuttal only. We always appreciate record sites. And just a warning, some of us have iPads with the whole record up here, so please make sure they're accurate record sites. And with that, we will go ahead and proceed to call the first case, 17-50765, Villarreal v. First Presidio Bank. Mr. Walker. Thank you, Your Honor. May it please the Court. The principal question before the Court in this case is whether a claim for money hadn't received based upon 30-year-old certificates of deposit should succeed, despite the fact that those certificates of deposit constitute express written contracts that govern the very subject matter of the dispute, and even though the applicable statutes of limitations and the presumption of payment should bar those claims. So you would agree that you can only win on a question of law because the factual finding about whether he cashed in the certificate of deposit was found against your client? Your Honor, we did bring up issues related to the facts. The principal issues before the Court really are questions of law, and that's what we need to focus on, I think, today. So the first issue that I think the Court can easily resolve this case on relates to whether there in fact exists a cause of action for money hadn't received under these that when there is a valid express written contract that covers the subject matter of the party's dispute, there can be no recovery under a quasi-contract or an unjust enrichment theory such as money hadn't received. So the district court recognized that these CDs in question were actually writings that evidenced the debt, and that it was undisputed that the CDs contained the expressed terms of the agreement. In other words, the bank had to pay principal and interest as calculated under the CDs. Where the trial court committed error, however, on this particular point was in identifying the subject matter of the dispute as whether the CDs had been cashed in at some point in the past. Well, that's not the subject matter of the dispute. That relates to a defense of the defendant, in this case, the banks. The subject matter of the dispute relates to what is it that the plaintiff in this case is seeking to recover. Here, it's principal and accrued interest over the 30-some-odd years that passed. Can I just ask you, this is sort of a background question, but I mean, I live in Texas, I have bank accounts in Texas, and every time that I don't do something on my bank account for like 10 days, I get this letter, your account is inactive, blah, blah, blah, we're going to eschew it to the state in five minutes, and whatever. I just feel constantly harassed by banks writing me about I'm not active enough in their particular account. And how could this possibly happen in a state where I actually went and looked up the statute, and it's inactive after one year, abandoned after three. So I'm obviously exaggerating a little in the letters, but nonetheless, I just don't understand how this could happen in a state where they're constantly pounding on you to come and write a check. It's virtually impossible to lose an account, or to make off with an account. So that's why the facts of this case are so compelling. So I think you're right. I've seen those statements, and now you get them by email, or there's a zero balance, or whatever's going on, you haven't done anything, you need to update information. That's just a common occurrence nowadays. Well, under the series, of course, we put together the evidence for the trial court as to what do you do? How can you come up 30-some odd years later and say, here are certificates of deposit, and I have the paper receipts here, and somehow you owe me money and prove that you didn't do it, which is what this case was all about. So the bank in this circumstance went through the exercise of going, well, first of all, take a look at the open accounts. They researched that, there was nothing there. They went back and took a look. Fortunately, there existed some evidence, and this is unusual, especially in today's day of mergers and acquisitions, that you actually had employees of the First Presidio Bank who had been there for decades. You had the bank president who was there, you had a couple of employees who were still there, who actually had recollections of those documents that described the FDIC supervision of the bank, the procedures that were in place for the bank, the internal auditing that is built up to reveal whether there exists an account. You have the annual reports, the auditors. There are just so many checks and balances that exist for Texas financial institutions that it's basically impossible to just lose an account. But don't you also have to file with the state about abandoned accounts and inactive accounts and so forth? So are there state records that would have some of this? There would be. So if, in fact, there was an open account that was inactive for a long time and there's no indication of the person still being around, then that account can be sheeted to the state, not this state. In fact, the bank checked the state records to see whether there had been a sheet for Mr. Villarreal. In fact, there was not. We also introduced evidence that, and how this system works well, even with this bank, was that we'd introduced evidence that there had been another account where a family of an individual who had 30-some odd-year-old CDs came in and said, look, we need to redeem these CDs. And they looked them up, and sure enough, they were there. So just because the certificate is a deposit issued years before doesn't mean that they don't remain on the records. And so if there is no activity, there's no communication, then those would be sheeted to the state. But then how did you lose on the facts, if all these facts are in your favor? I don't know, Judge. And don't we have to give some deference to that? That the judge, I mean, so you have all of this long thing, the records, and the this and the that, and the employees from 25 years ago, and then he comes in and goes, I didn't redeem it, and the judge believes that. Isn't that a quintessential fact-finding? That is a fact-finding, Judge, but what we did show to the Court were the errors in those findings. So, for example, the trial court found that Mr. Villarreal had believed his statement when he said that he had placed these 1983 and 1984 certificates of deposit in the safe deposit box as soon as he got them. Well, the uncontroverted evidence is that he didn't have a safe deposit box until 1990. So it's impossible to place in the safe deposit box CDs that are issued six to seven years before that occurred. That's one example that we have. Let me ask you something about the issue of law here. You find several Texas cases talking about what's required to establish a cause of action for money hadn't received. For example, the Stats v. Miller case says the question in an action for money hadn't received is to which party does the money in equity, justice, and law belong? All plaintiffs need show is that defendant holds the money which in equity and good conscience belongs to him. I mean, there's several cases that seem to say if you label your cause of action as a money hadn't received, there's a different standard. Those cases, Your Honor, don't address the issue of the express written contract. And so what they don't say, it's like there's an assumption that, okay, this is not a case involving an express written contract. If there isn't an express written contract, then here are the elements of the cause of action for money hadn't received. So I think that they're very distinguishable. You can't, there's nothing in Texas law that says that you can't, when you have an express written contract that governs the very subject matter of the dispute, that you can't elect to ignore all of the contract law and what oral parole evidence is not admissible, all that kind of stuff as it relates to your written contract and say, well, look, it's unfair that you have my money even though we have an express written contract. There's nothing in Texas law that says that you can elect between suing on the express written contract or saying we're going to call this a money hadn't received case. Counsel? Yes, Your Honor. The Stats case that Judge Davis just referred to, do you recall whether that case involved an express written contract or was it an oral contract? It was an oral agreement, Your Honor, that there's an oral agreement to sell a harvester, if I recall correctly, and so that was not an express written contract. So is it your position that the Fortune case, is the Fortune case the best case for you? Is that your best case? Absolutely. Okay. Is it your position that the Fortune case somehow modifies the Stats case or overrules it or? It speaks to a different issue, I think, Your Honor. So I think that the Fortune Productions case says that here's the general rule in Texas. If you have an express written contract, that's what you sue on. It has to be a written contract? That's what the, that's what the, yes, Your Honor, because if you have an oral agreement or a promise, like, for example, if you have a circumstance in which someone says, I'm going to give you or you ask for someone to give you some money down and we're then going to enter in a written contract but it doesn't happen, then you, in that circumstance, you may have a cause of action for money hadn't received. But so long as you have a written agreement, whether it's, you know, for purchase of a car or whatever it may be, Texas law is pretty clear in the Fortune Productions case that that's your cause of action. It's a cause of action for a breach of contract. It's not a cause of action for money hadn't received. Yeah, I never, I mean, this is the first time I've seen some, I mean, I've done Texas law on money hadn't received for decades and this is the first time I've seen it in this context that I remember. I'm sure in thousands of cases on the state court, maybe there was some, but it just, to me, is a separate concept from breach of contract. It is, Judge. It's meant for, if you went out and bought something at McDonald's for me for $10, I was supposed to pay you $10 and I went online and entered $100 by accident, $90 would be money hadn't received. You should pay me that $90 of money hadn't received because you know I was trying to pay you back $10 and I inadvertently paid you $100. The $90 is the unjust enrichment. I mean, that's kind of how it's always come up. This seems like a weird context. That's correct. This is the first one I've heard. So why did they not sue on the CDs themselves? I don't know. I mean, that would certainly be, to me, that would be the first thing because if you sued for breach of contract, you could recover attorney's fees under Chapter 38 of the Civil Practice and Remedies Code. I don't know why they didn't do that. The focus of the case when it was filed was really on a wrongful dishonor claim under the Texas Finance Code. And so we fought issues, lots of issues, and some of which kind of still mill around in the case at this point as it relates to the limitations with respect to the wrongful dishonor and what kind of accounts and all that exist. I don't know why they didn't bring that. If they had brought it, I believe that the claim would still be under limitations, but we wouldn't have this issue as to money hadn't received is simply not an available cause of action when you're suing an express written contract. Let me ask you about limitations. Does the limitations point depend on whether to characterize the CDs as a general or a special deposit? It does not. Why not? The reason, Your Honor, is that that's really that the general special deposit is a remnant argument from the discussions that we had with the court as it relates to the wrongful dishonor. So the money, the CDs are written documents. It should be a breach of contract cause of action. But the general rule for money hadn't received anyway is the cause of action accrues when the overpayment is made, for example. It's not dependent upon the characterization of some sort of account. Right, right. But my question was about what if we were talking about this as a breach of contract claim? And I'm sorry I wasn't clear, but when does, if this is a general deposit, let's say this is a general deposit, because I know the Texas, I think the Texas case lies, CD can either be a general or a special deposit. Am I right about that? Yes. Okay. If it's a general deposit, when does the cause of action accrue on a breach of contract claim? Well, if there's a matter that relates to a general deposit CD, there's a case that we decided in the court that says that CDs are not general deposits for a long time ago. And so a general deposit is basically... Are you talking about the Ames case? I'm sorry? Are you talking about the Ames case? There is a, the Rodriguez case from 1919 says that the CD is a note and the statute of limitations runs from the date of maturity, for example. All right. Well, let's, so let me just ask as a general question. If on a general deposit, when does the cause of action for... A general rule for a general deposit, if you're tracking that like a savings account, would be when demand is made and then when the demand is refused. That's when that occurs. And a special deposit? Special deposit would be different. It would be when, it basically the same thing as for when the general rule of money had received is when the failure to pay, there's an obligation to pay when the failure to pay occurs. Okay. Your position is it doesn't make a difference in this case? In this circumstance, because of, you know, the trial court said, well, the CD is a general deposit, which it isn't. If you are to, if you're to separate the issue of the written contract from money deposited into a bank, if it's money that's generally deposited in the bank, then that's just a general deposit in the funds of the bank. So for example, in this case, we know that the plaintiff, when suing and the damages is sought, related to calculation of interest, not under a general deposit like a passbook savings, but they calculated interest based upon the terms of the CDs. In other words, a six-month interest, which is different and higher than what you would get for a general deposit or for a general savings account. You're almost out of time, so I'll give you 30 seconds on latches. The plaintiff waited way too long. The plaintiff knew in 2008 You think 30 years is too long? I'm sorry? You think 30 years is too long? I think it's just a tad too long, Your Honor. Don't we need extraordinary circumstances? If there isn't a statute of limitations defense, don't we need extraordinary circumstances to then go ahead and say it's barred by latches? Latches relate to when there's too much time that's passed and you have a party who has, if I can finish my... He's distinguishing between latches and limitations, saying if limitations governs and they're within limitations, why should we even get to latches? That's the question. Part of the issue with limitations and latches is that limitations, you have a specific date to work with. In other words, there's an event that occurs from which you can calculate limitations. Latches is a more broader concept in which we have to say that you waited too long, that there's been a change in position by the other party because you knew that you should have asserted rights earlier. Here, of course, we had in 2008 the bank statement that showed that there was nothing being deposited. In 2010, they're at the bank and the bank tells them that you have no money with the bank and they wait until 2015 to file a suit. Thank you. You've saved time for rebuttal. May it please the court, counsel. My name is Jamie Wall of the law firm of James and Hoagland and I'm here today on behalf of Roberto Villarreal, the appellee in this case. Obviously, we're here today on an appeal of a money judgment in favor of Mr. Villarreal. On its appeal, the bank raised about five points of error. Most of these are technical legal arguments, but separate from these is the bank's overarching argument that the trial court's decision unfairly imposes a duty on banks to keep their records indefinitely. Just as a road map, I was going to first address that argument regarding this unfair imposition and then talk about the presumption of payment, the cause of action. Well, essentially, the bank argues that the trial court erred in interpreting the fortune production case to mean that an express agreement does not bar a claim for money had and received if the plaintiff is not seeking a remedy inconsistent with that agreement or if the agreement does not address the dispute. Now, the bank interprets this case to mean that the plaintiff can never bring a claim for money had and received for debts that are the subject of an express agreement. We believe this interpretation is incorrect because first under Texas case law, a cause of action for money had and received only has two elements, that the defendant holds money and two, that the equity and good conscience that belongs to the bank. Yeah, but I mean, I've, so I've given you my very simplistic version of money had and received and I realize there's much more to it, but it's just not for this situation. Let me come at it this way. Can you point us to a case that's even close to this situation where money had and received applied? Well, the fortune case, I think, does go to this notion because where there's, the contract just doesn't address this situation, you have to look to money had and received because in this case, the CD's, by their very terms, required presentation and endorsement as a condition of payment. Okay, so why doesn't the CD address this situation? I've got this document, I show up and I say I want my money and they go, no, and then they got to prove that I already showed up and got the money. Why is that not very much in keeping with the terms of the CD? Well, because the contract, the CD's terms specifically say all you have to do is present and endorse. Okay, well that sounds like a pretty good case for you. Their defense then may be crummy, would have to look at that, but why does that convert a written document into a money had and received case? Because the plaintiff in this case no longer has to abide just by the contractual terms. He's got to do something else beyond that contract. He's got to prove somehow. Well, that's their problem. I mean, they've got this defense that they've got to come up with that you say is nowhere in the document, nothing to do, you just show up and say I want my money and they're trying to go, blah, blah, blah, blah. And so then they would be the ones really with the money had and received claim if in fact the CD is redeemable if you've got the document. And this thing about we paid you before doesn't work. They'd be the one with the money had and received claim if in fact they paid you before. I don't see why that changes your cause of action that their defense may or may not be a good one. Why does that change your cause of action? Because we're required to now go beyond what is required by the contract. Why are you required to? You're suing. Because they're not going to pay this. Okay, that's why you sued. Yes. So you're suing. Well, that's what the breach is, isn't it? I mean, when you have a contract that requires a party to perform, you have to show they didn't perform to make out your breach claim. But that's not part of the contract. That's just the failure to perform. But this is based on their extra contractual policy of allowing people to cash in their CDs by filling out these forms that hold the bank harmless. Now, we have to establish that we've filled out one of those forms in order to correct. No. Your case is very simple. I got this document. It says you owe me money. The case becomes complicated when they start going, well, you did this, you did that, whatever, whatever. And if they lose on that, they're the ones with the money had and received claim, then they prove, well, look, we paid you on this CD years ago, and now you've come back and recovered on it because you still had the document. I still don't see why that changes your fundamental cause of action. The fact that they come in, I mean, they can come in and say whatever they want. I don't see why that changes your basic premise. I've got this document. You're supposed to pay. You didn't pay. As Judge Davis said, that's the breach. You didn't pay. Well, because there's essentially been a modification of the original CDs by their allowance of the parties to sign an extra, an affidavit, essentially waiving our claims against the parties. Let me ask it a different way, counsel. The Fortune case, which I'm looking at, seems to me to be critical to this case. So the Fortune case says, generally speaking, when a valid express contract covers the subject matter of the party's dispute, there can be no recovery under a quasi-contract theory with certain exceptions not relevant here. Is it your position that there is some exception to that rule that applies in this case? And if so, could you articulate for me what the . . . because I see here that overpayment is an exception that's been recognized by Texas courts. I get that because that's outside the contract, right? You paid too much. Give me some back. What exception applies here? Well, the trial court essentially found an exception because they were . . . the contract is no longer based on what the language of the CD says. We have to recover by doing extra. We have to show that we didn't waive our claims against them. And also the Fortune case says you can't use unjust enrichment, money hadn't received, to obtain more than you would have been able to under the contract, but you can use it to obtain what you would have been able to. Let me ask it another way. Is the relief that your client is claiming what you're owed under the CD? Yes, Your Honor. Plus interest, I assume, right? Yes. Okay, so what you're owed under the CD, that's what you're claiming. You're not claiming more, you're not claiming less, you're claiming exactly what the CD says you're owed. We are claiming exactly what the CD says we're owed. Okay, why isn't this a quintessential breach of contract, you owe me money, no I don't? Once again, because we had to go above and beyond . . . No, because you didn't have to. They have to prove, because they're the ones that are we paid, because you're basically saying I should get, I don't remember what the final number is, but let's say $10,000, I should get $10,000, and they go, we already gave you $10,000. That's their answer. They already complied with the contract. I'm saying you breached it, you're saying no I didn't. Yes, no, yes, no. That's like any breach of contract. I was supposed to clean your house, and you didn't. Yes, I did. No, you didn't. You know, whatever, and then somebody has to decide, did I clean it or did I not? Did I pay, did I not? All of those types of things. I don't see why we're . . . because to me, money hadn't received . . . everybody's arguing it as if it's this special thing that just allows people to get money whenever they feel like it, and to me, it's a very narrow category to cover these kind of things like I started out with. I was supposed to pay him back $10 for his trip to McDonald's, and instead I inadvertently entered $100. That's the quintessential money hadn't received. It's not something like this situation, and I realize I have a motto, challenge all assumptions, so just because I think I know what Texas law is after 30 years, I'm open to learning more. So I'm waiting for you to tell me something that makes that view of the case law wrong. Just what I've said before, the fact that you have a modification that is not in the plain language of the CD that requires us to do more than what the CD required in the first place. In order to receive payment, we just have to endorse it and submit it. Now that's out of the . . . now that's not enough because they say time has passed, and you . . . we modified this agreement somehow. So why didn't you sue for breach of contract? You know, I do not know, Your Honor. I was not trial counsel. I do not know why cause of action for breach of contract was not asserted at that time. But if we conclude that this just isn't the kind of facts that allow for a money hadn't received, then your client would lose. I mean, that's kind of the whole case. Okay. What's your answer to Latches? Latches, that's kind of the same issue. I'm sorry. Well, it's a little different because it has to do with . . . he . . . even if we accept this notion that you wouldn't necessarily know that they have dishonored your CD, you know you're not getting . . . your client knows he's not getting interest for decades on the CD that's supposed to be deposited in his account that doesn't have any money in it. So why doesn't that constitute an extraordinary circumstance for Latches' purpose? Well, I mean, in this case, I don't think the statute of limitations had to run because . . . and that was the trial court's finding . . . because the statute of limitations for a general account and I believe their testimony was also that you have to make a demand in order to obtain a CD. If you don't make a demand, it's just sitting there. There's no cause of action and you don't have a cause of action because it's not right. It's contingent upon you doing something and them saying, you know, we're not going to allow you to redeem this CD. And so in that sense, there's no unreasonable delay by Viorel or if there is, there's been no good faith change of position by the bank because of the delay. Do you . . . I'm sorry to interrupt. Does your client concede that he has never received one dime of interest on the CDs? I do not know. Well, you're seeking damages that go back . . . am I . . . I mean, maybe I'm wrong. You're seeking damages that go back to the . . . whatever you call it . . . the inception date of the CD in the 83 or 84. Is that right? Yes. So that seems to me to be a concession that . . . you can't ask for more damages than you're entitled to, right? You're asking for that. Yes, Your Honor. So I take that as a concession that he hasn't received any interest on this. That's true, Your Honor, but what happened at trial is the issue of principle was the main thing and parties stipulated to the interest rate that would have been available during all this time, and there was no request to in any way separate that out or no objection to the . . . Okay, so maybe it's not as clear a concession as I'm suggesting. I'll ask the other side. But going back to the detrimental good faith change of position by the bank, you know, the bank has argued that the delay resulted in its records being destroyed. Right. I was going to say that's kind of a big deal. I mean, it's surprising they have the records they do, but in this era of converting written to computer, not everything gets done very well, and you certainly wouldn't think the records from the 80s would be something you need to really focus on. Maybe this is a lesson to microfiche everything or whatever the current equivalent of that is, but what about that? They would have kept . . . if they'd known that Mr. Villarreal might come back, they'd keep his file, and then we would know for sure. Well, I mean, going back to essentially the modification of the CDs, if they're going to say sign this document that holds us harmless, then that's the only record they need to keep to defend themselves. Going back 35 years, I think in this case they said it was a small drawer that occupied one small drawer of a cabinet. Whether or not they want to destroy documents after five to seven years, that's up to them if they want to abide by those regulations. But if they're going to come in and say, well, we want you to hold us harmless because of this pointed out, going forward, all of these things are probably going to be done electronically. This case happened to occur 25 to 30 years ago where everything was done by hand. I think what's agitating the banks about this case is the past, less so the future, because it is easier to keep stuff into the future, although you have this whole original signature complexity. But putting all that aside, you can at least keep a copy of something electronically much more easily now. But whether you necessarily have done or should have to do that for everything going back to 1919, the age of one of the case sites, that's a little bit because, I mean, what would be to keep me from saying my grandfather had a CD from 1933 that I now want to redeem? I mean, under your theory, I can do that. Nobody's denied it. The limitations start to run today, and the banks got to run around proving that they paid my grandfather in 1933. And I can say, no, my grandfather was always talking about this CD that he loved so much, and he would never redeem it. And now I have it, and here I am. Well, that's a fact issue that the court decided in favor of the plaintiff in this case. But that's the argument they're making, is that this just becomes just unmanageable if you can just do that, what I just said. What about my great-grandfather? I mean, I don't know. Well, but looking at it from the other perspective, in the bank's argument, if there's a dispute, the customer can't rely on the language of the CDs, and he's going to have to keep his records indefinite, essentially saying, I never received this money. Well, that's why I started with the question about this Chapter 73 inactive stuff. I mean, as I said, I get these barrages. I have some accounts that I use a lot and some that are more in the nature of savings that I don't use a lot, and I get this barrage of letters, and I have to call and say, yes, I still love my account. I don't want you to give all that money to the state in order to keep it. So it just seems weird to me, and I'm not saying this is your client's fault. It's just weird to me that you can have something sit around for 30 years without all these letters and whatever. Well, I mean, there was no evidence that, I mean, there was evidence that some were sent, but with regard to whether or not the bank abided with all these regulations, they keep pointing to these regulations, but time and again the court found, well, they didn't actually abide by the regulations that they're claiming. So with regard to the sheet of the CDs, they first pointed and said, hey, we have no record of any money as a sheeting to the state, but they also pointed to the safety deposit box, which they're supposed to sheet to the state after three years. And, you know, the bank president testified, well, yeah, we were supposed to do that, but we just didn't do it. And so you can't just point to these regulations and say, hey, we've got these regulations, you know. So you're saying if you want to protect yourself against the great grandfather scenario, follow the regulations that require you to write these letters or whatever and find things inactive, find them abandoned, so on and so on, because then you're covered by that. Is that the argument? I believe that was a large part of the trial court's issues with credibility regarding the bank's testimony. Because, you know, one person would testify to one thing and another one would say, well, we didn't actually do that. You know, we're supposed to keep records for five to seven years. Well, where are the records for, you know, five to seven years before this case? Well, those probably got shredded. We don't know. And so, once again, you know, banks are not infallible. Just saying we have regulations in place that don't allow this to happen, well, that's just not what happened, you know, with regard to a number of issues in this case. Do you have any other questions for me? No. Okay. Thank you so much. Thank you. Appreciate it. All right. And now, Mr. Walker, we'll have your rebuttal. Thank you, Your Honor. I'll go back and cover a couple points and then rebuttal. Counsel made a comment that the trial court had found an exception to the application of fortune products. That's not what occurred. What the trial court did was simply misapply it in the definition of what is the subject matter dispute. So I'll make sure we're clear in this issue is that there is no exception that applies. Trial court never found that. It was simply a trial court said the issue that the parties are disputing is the defense of payment, not the subject matter. In other words, a calculation of what would be the principal due. And then again, going back to the point I made earlier that they were calculating interest from the date of inception, following up on the Court's question earlier, from the inception of the Certificates of Deposit in 1983 and 1984. We didn't dispute the way that they made the calculations, but that's what they relied upon at trial and before the Court, was you owe us principal plus interest from the date that these CDs were issued in 1983 and 1984 based upon this six-month prevailing rate, which was a six-month treasury rate. So what about Judge Duncan's question about whether they've essentially conceded, whether both sides agree that no interest was ever paid? Well, we don't agree that no interest was paid. We believe that it was paid. The problem is, is that the records that existed on that payment were destroyed after Mr. Villarreal was made both actually aware of the fact that there was nothing left in the account and that there was no interest being paid but before he filed suit. So again, it's unusual that we are actually able to have some of this evidence. So in 2008... But they're claiming the interest goes all the way back to the... Right. That's their claim. They're saying you agreed to that calculation. That's what I was trying to get at. Well, all we agreed to is that we're not agreeing that you do that, but we're just simply saying that if you're going to calculate interest, then... Here's the numbers. The numbers that you said, we're not going to dispute that. Once the, what we said at trial was the calculations are correct. You're not owed that, but the calculations are correct. It's the math. Right. The math is right. Okay. But at any rate, so the point being is that for the money had received issue, the subject matter of the dispute simply was the principal and interest as calculated. You'd ask questions about the latches and unreasonable delay. This is a real problem, and you've honed in on some issues that are very troubling to the banking industry. So when you have a person, and I'll say we did introduce evidence of some of the information about what is a concern. So banks and savings institutions and other financial institutions in Texas have been issuing paper receipts for certificates of deposits for most of the 20th century. Nowadays, I think they're mostly electronic. So these things have been given to people time and time again. I don't know what the numbers are, but they're very large. But we did introduce evidence that there is a significant percentage, maybe 20, 25% of the original paper CDs that never made it back to banks. Again, this is something that if you think about the number of paper CDs that were issued for many decades, this is a large number. And these, if you look at some of the cases, an example we gave at trial was a person's family came in with similarly aged certificates of deposits saying that were owed on those, and the accounts still didn't exist, and were paid, including any interest that had not yet been paid. This is a very significant concern for all financial institutions in Texas, because even if you looked it up on Google and tried to find out, looked it up on the web, that there are forums that people ask, what do I do with this? I found this in the sock drawer or the safe deposit box. Or someone says, well, every time I cash in my CD, I put the CD back in the folder we had. So these things are out there, and this is a very significant concern as to what we can do with those, which is why we're here and we're defending this case. So to go back to the issue of the unreasonable delay, in 2008, at the merger of the First Presidio Bank with Marfa National Bank, there was a snapshot taken at that time of the documents, of the accounts that were still open. His account was still open, though barely, and reflected, and it was the only checking account that he had with the First Presidio Bank, and it was where all interest was deposited. It was supposed to go. All interest goes in there. Unquestioned that that's where all interest would go. 2008, 2010, he was actually aware that there was no money in there, and yet, if I may finish the sentence, and yet, waits until 2015 when, just as these records have been there for many years, were destroyed in 2013, so that the town of Presidio could take over the old building. Okay. Thank you. Thank you. We have your arguments, and the case is under submission.